**[J-90-2015]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.**


| | | |
|---|---|---|
| K.C. AND V.C. | : | No. 65 MAP 2015 |
| | : | |
| | : | Appeal from the Order of the Superior |
| v. | : | Court dated April 10, 2015, at No. 499 |
| | : | EDA 2015, quashing the Order of the |
| | : | Lehigh County Court of Common Pleas, |
| L.A. | : | Civil Division, dated January 2, 2015 at |
| | : | No. 2013-FC-0708 |
| | : | |
| APPEAL OF: D.M. AND L.N. | : | SUBMITTED: October 21, 2015 |


## OPINION


**MADAME JUSTICE TODD** **DECIDED: December 21, 2015**

In this appeal by allowance, we are asked to determine whether an order denying a petition to intervene in a custody action is appealable as a collateral order as of right pursuant to Pa.R.A.P. 313.[1] For the reasons that follow, we hold that such an order is, in fact, a collateral order appealable under Rule 313, and, thus, we reverse the Superior Court's order quashing the appeal and remand to that court for consideration of the issues raised therein.

This case arises out of an action for the custody of L.A. ("Child"). Child was born on December 9, 2011, to L.A. ("Mother") and Q.M. ("Father"). Several months later, Northampton County Children and Youth Services ("CYS") filed an emergency

---

[1] This case comes before this Court as a children's fast track appeal pursuant to Supreme Court Internal Operating Procedure § 4.

application for protective custody over Child. The trial court adjudicated Child dependent and granted CYS legal custody on February 9, 2012. CYS subsequently removed Child from Mother's home and placed her in the care of Appellant D.M. ("Maternal Aunt"), and Appellant L.N., a friend with whom Maternal Aunt resided (collectively "Appellants"). Child lived with Appellants from February 10, 2012 to September 20, 2012, at which time the trial court granted Appellants and Father shared legal and physical custody over Child. The trial court later vacated its adjudication of dependency on April 4, 2013, awarded sole legal custody and primary physical custody to Father, and awarded partial physical custody to Appellants every other weekend. Throughout the entire period during which he exercised custody over Child, Father resided with his mother and stepfather, Appellees V.C. and K.C. ("Paternal Grandparents").

On June 6, 2013, nearly two months after he had been awarded primary custody, Father suddenly passed away. Paternal Grandparents began caring for Child, and, on June 13, 2013, they filed a complaint for custody against Mother,[2] seeking sole legal and physical custody over Child so as to "preserve and maintain the status quo" and "so as not to disrupt the [C]hild's living arrangements." Complaint for Custody, at 3. Mother did not contest the matter; however, on June 25, 2013, Appellants filed a petition for intervention, wherein they asserted that they stood *in loco parentis* to Child and sought primary legal and physical custody. In response, Paternal Grandparents filed an answer and new matter in which they alleged that Appellants lacked standing under 23 Pa.C.S. § 5324[3] to seek legal or physical custody over Child, claiming they were only

---

[2] The trial court awarded Mother limited physical custodial rights in the form of supervised visitation through Catholic Charities. See Trial Court Order, 4/4/13, at 1.

[3] Specifically, 23 Pa.C.S. § 5324 sets forth the requirements for standing in custody actions, and provides that only a parent of the child, a person who stands in *loco* (continued…)

temporary foster parents and, therefore, that they could not stand *in loco parentis*. On January 2, 2015, following a hearing, the trial court denied Appellants' petition to intervene, noting that "relationships which are based on foster care do not give rise to *in loco parentis* status for purposes of custody." Trial Court Order, 1/2/15, at 1 n.1.

Appellants appealed the order denying intervention to the Superior Court, which directed them to show cause why the appeal should not be quashed in light of the fact that the order did not appear to be final or appealable. In response, Appellants argued that the trial court's order was final and appealable under Pa.R.A.P. 341, and, alternatively, that the order was a collateral order subject to an appeal as of right pursuant to Rule 313. The Superior Court nevertheless quashed the appeal in a *per curiam* order dated April 10, 2015, concluding the trial court's order denying the petition to intervene was "not a final order in the custody matter and thus not final or appealable."[4] K.C. and V.C. v. L.A., 499 EDA 2015, 1 (Pa. Super. filed 4/10/15) (order) (citing Pa.R.A.P. 341(b)(1) ("A final order is any order that: (1) disposes of all claims and of all parties"); G.B. v. M.M.B., 670 A.2d 714 (Pa. Super. 1996) (holding order awarding father temporary partial custody prior to custody hearing was not final and appealable under Rule 341); Boise Cascade Corp. v. East Stroudsburg Savings Ass'n, 446 A.2d 614 (Pa. Super. 1982) (quashing appeal from order denying intervention in action in *assumpsit* because order was not final)).

---

(…continued)
*parentis* to the child, or a grandparent who does not stand *in loco parentis* to the child and meets several other enumerated conditions may file an action for legal or physical custody of a child. 23 Pa.C.S. § 5324.

[4] The Superior Court did not address Appellants' alternative argument pertaining to Rule 313.

Thereafter, Appellants filed a petition for allowance of appeal with this Court, raising the issues of whether their appeal from the trial court's order denying their petition to intervene was appealable as a final order under Rule 341 or, alternatively, as a collateral order pursuant to Rule 313. We granted allowance of appeal, limited to the following issue:

> Whether an appeal from a trial court order denying a petition to intervene in a custody action is appealable as a collateral order pursuant to Pa.R.A.P. 313 because the order is separable and collateral to the main cause of action, the right involved is too important to be denied review, and the question presented is such that if review is postponed until final judgment in the case the claimed right will be irreparably lost[.]

K.C. and V.C. v. L.A., 121 A.3d 432 (Pa. 2015) (order).

By way of background, prior to 1992, orders denying a party the right to intervene in an action were appealable as of right under Rule 341 because they "have the practical consequence of putting a litigant out of court," and, thus, were viewed as final with regard to that party. Pa.R.A.P. 341, Note. However, the 1992 amendment to Rule 341 abandoned this liberal "final aspect" approach to finality by generally limiting appeals as of right to only those orders which "end[ed] the litigation as to all claims and all parties." Id. As a result, appeals from several types of orders which were formerly permitted under Rule 341 were eliminated from the rule's scope, including appeals from orders denying a party's right to intervene. The Official Note to Rule 341 specifically identifies, *inter alia*, an order denying a party's right to intervene as one such order which is no longer appealable as a final order under the rule.

Nevertheless, although Rule 341 specifically precludes a party from appealing an order denying intervention before the underlying action becomes final under Rule 341's present formulation, the Official Note to Rule 341 also states that such an order may be

immediately appealable as a collateral order under Rule 313 if it meets the criteria set forth in that rule. Otherwise known as the collateral order doctrine, Rule 313(b) provides that an interlocutory order is collateral and, therefore, immediately appealable, if it is: "[1] separable from and collateral to the main cause of action where [2] the right involved is too important to be denied review and [3] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b); see also Commonwealth v. Wright, 78 A.3d 1070, 1077 (Pa. 2013).

Before us, Appellants argue that the trial court's order denying their petition to intervene in the custody proceedings is a collateral order appealable as of right under Rule 313, and, thus, that the Superior Court erred in quashing its appeal. With respect to the first prong of the collateral order doctrine, Appellants contend the order denying their petition to intervene is separable from the underlying custody action because it concerns the issue of whether they have standing to intervene, a question they claim is separate from the main issue in the custody proceeding regarding who should have legal and physical custody over Child.

Appellants next maintain that their right to intervene in the custody action is too important to be denied review because the issue of which parties may have standing in such proceedings implicates the best interests and welfare of children, Appellants' Brief at 16 (citing G.B., 670 A.2d at 718 (highlighting the Commonwealth's interest in children and the fact that custody orders have a "significant, important and immediate impact upon the welfare of children")), which they note has been recognized by the legislature as important enough to prompt it to enact statutes specifically devoted to defining standing to file custody actions in 23 Pa.C.S. §§ 5324-5325.

Lastly, with respect to the final prong of the doctrine, Appellants assert that their right to intervene will be irreparably lost because, pursuant to In re Barnes Found., 871

A.2d 792 (Pa. 2005), a party must appeal from an order denying intervention within 30 days of the entry of the order or it will lose its right to appeal the order entirely.[5] Appellants further note that the denial of intervention precludes them from appealing the final custody order, as "one who is not a party to a proceeding is not permitted to appeal from a final order." Appellants' Brief, at 17 (citing Barnes, 871 A.2d at 794 ("failure to attain intervenor status forecloses a later appeal.")).[6] Appellants posit that, as a result, the Superior Court's quashal of their appeal has placed them in a "Catch-22," with no remedy at law by which to challenge the trial court's interlocutory order denying intervention or to challenge the final custody order, a result they deem "absurd." Appellants' Brief, at 18-19.[7]

We now turn to our analysis of the issue before us. The question of whether an order is appealable under Rule 313 is a question of law. Accordingly, our standard of review is *de novo* and our scope of review is plenary. Commonwealth v. Williams, 86 A.3d 771, 781 (Pa. 2014). We construe the collateral order doctrine narrowly so as to avoid "undue corrosion of the final order rule," Melvin v. Doe, 836 A.2d 42, 47 (Pa. 2003), and to prevent delay resulting from "piecemeal review of trial court decisions." Pridgen v. Parker Hannifin Corp., 905 A.2d 422, 427 (Pa. 2006).

---

[5] As we discuss below, Barnes contemplates that this appeal would be pursuant to Rules 312 or 313.

[6] Appellants also contend that, if they are forced to wait to appeal the denial of intervention until after the custody action becomes final, and if they succeed on appeal, all of the parties will then be forced to undergo a second custody hearing, which they assert is "contrary to the goal of . . . promptly resolv[ing] custody disputes." Appellants' Brief at 17. However, as we discuss infra, and as Appellants otherwise appear to recognize, such a result is not possible under Barnes because Barnes does not permit an appeal from a denial of intervention after the underlying action becomes final.

[7] Paternal Grandparents have elected not to file a brief in this matter.

As noted above, the collateral order doctrine permits an appeal as of right from a non-final collateral order if the order satisfies the three requirements set forth in Rule 313(b). With regard to the first prong of the collateral order doctrine, an order is separable from the main cause of action if it is "entirely distinct from the underlying issue in the case" and if "it can be resolved without an analysis of the merits of the underlying dispute." Commonwealth v. Blystone, 119 A.3d 306, 312 (Pa. 2015) (internal quotation marks omitted). Here, as Appellants have noted, the order denying their petition for intervention concerns their standing to seek custody of Child under 23 Pa.C.S. § 5324, a necessary threshold issue which must be determined before proceeding to the central question in the underlying custody action regarding who should exercise custody over Child. See Pittsburgh Palisades Park, LLC v. Commonwealth, 888 A.2d 655, 659 (Pa. 2005) ("Prior to judicial resolution of a dispute, an individual must as a threshold matter show that he has standing to bring the action."). As the issue of whether Appellants are among the individuals who have standing to seek custody under Section 5324 is a conceptually distinct legal question which has no bearing on the central issue within the custody action — who is entitled to physical and legal custody of Child in light of her best interests — we find that Appellants have established that the trial court's order is separable from the main cause of action. See In re J.S., 980 A.2d 117, 121 (Pa. Super. 2009) (finding order denying foster parents' petition for intervention in a dependency action satisfied first prong of collateral order doctrine because "the determination of . . . standing . . . is peripheral to the substantive decisions affecting the child's best interests, which is the polestar of all dependency proceedings."); Moyer v. Gresh, 904 A.2d 958, 961 (Pa. Super. 2006) (treating dismissal of a party from a child custody action as distinct from the merits of

the custody action). Thus, Appellants have satisfied the first prong of the collateral order doctrine.

Next, with respect to the second prong of the doctrine, the importance prong, a right is important if "the interests that would go unprotected without immediate appeal are significant relative to the efficiency interests served by the final order rule." Williams, 86 A.3d at 782. Notably, the rights involved must implicate more than just the individual parties in the matter, and, instead, must be "deeply rooted in public policy going beyond the particular litigation at hand." Blystone, 119 A.3d at 312 (internal quotation marks omitted). In the instant case, it is undeniable that a decision regarding Appellants' claimed right to standing to intervene in the custody proceedings will have a direct effect on Appellants' ability to participate in the custody proceedings, and, thus, on Child, as, if Appellants are, in fact, entitled to intervene in the custody action, they could be awarded partial or full custody.

However, while Appellants' claimed right to intervene in the custody action may, at first blush, appear to implicate only the individual parties involved, this right has important policy implications extending beyond this particular case, as the state has a "longstanding interest in protecting the health and emotional welfare of children," and decisions regarding which parties have standing to participate in a child custody action directly impact the children involved in such actions. Hiller v. Fausey, 904 A.2d 875, 886 (Pa. 2006). More specifically, in the context of child custody proceedings, the state has a "paramount concern" in "the best interest and permanent welfare of the child," and has deemed all other considerations "subordinate to the child's physical, intellectual, moral and spiritual well-being." In re Davis, 465 A.2d 614, 618 (Pa. 1983); see also G.B., 670 A.2d at 718 ("Child custody orders are treated differently because they have significant, important and immediate impact upon the welfare of children.").

Accordingly, Pennsylvania has a strong policy interest in ensuring that courts award custody to those individuals who are most equipped to serve the best interests and permanent welfare of the child, an aim only achievable if all parties who have a type of parental relationship with a child, i.e., have standing under 23 Pa.C.S. § 5324, are permitted to participate in a child custody action. Thus, we find that the state's paramount interest in the welfare of children and, as a result, in identifying the parties who may participate in child custody proceedings, demonstrates that Appellants' claimed right to intervene satisfies the importance prong of the collateral order doctrine.

Lastly, we turn to the final prong: whether Appellants' claimed right will be irreparably lost if review is postponed until after final judgment. In this regard, as noted, Appellants rely on Barnes, a case which concerned the restructuring of a charitable institution. Therein, an appellant seeking to participate in the orphans' court proceedings was denied intervention, failed to appeal from the trial court's order denying his petition to intervene, and, instead, lodged an appeal from the final order in the case. We quashed the appellant's appeal because he had failed to obtain intervenor status and, thus, was not a party to the underlying action. See Barnes, 871 A.2d at 795. In so doing, we reasoned that "a common pleas court's order denying intervention is one type of order which *must be appealed within thirty days* of its entry under Rule of Appellate Procedure 903, *or not at all*, precisely because the failure to attain intervenor status forecloses a later appeal." Id. at 794 (emphasis added). We explained that requiring a party who has satisfied the requirements of the collateral order doctrine to timely appeal from the denial of intervention, rather than wait to appeal that denial after final judgment, was the preferred approach in such circumstances, as it would avoid the "risk [of] interference with trial court proceedings taken after the denial of intervention, a prospect far costlier than insisting that the applicant appeal the denial

without waiting to see whether the outcome of the proceedings leaves intervention still desirable." Id. at 795 (quoting Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 15A Fed Prac. & Proc. Juris.2d § 3902.1 (2005)).

While Barnes did not involve a child custody action, its language is broad and applies to any "common pleas court's order denying intervention." Barnes, 871 A.2d at 794. Moreover, the rationale behind requiring the immediate appeal of a denial of intervention in Barnes — namely, the risk of interference with subsequent trial proceedings — is even more pronounced in the context of a child custody action, given the significant interests at stake. We, therefore, find that Barnes applies to the trial court's order in the instant case. Accordingly, because Barnes unequivocally requires any party who was denied intervention and who satisfies the requirements of Rule 313[8] to appeal from the order denying intervention within 30 days of its entry or lose the right to appeal the order entirely, Appellants' right to appeal from the order denying intervention in the instant case will be manifestly lost if they are not permitted to appeal the order.

We recognize that this result may appear to be in tension with our goal of achieving the prompt resolution of child custody disputes, as permitting the piecemeal appeal of an order denying intervention may delay custody proceedings. However, we find this delay is preferable to the alternative of completely denying a party the right to file an appeal — given the possibility that the party does, in fact, have standing and should have been granted intervention — which then forces that party to file his or her own separate custody action in order to seek redress. Moreover, our courts are firmly committed to the prompt and efficient resolution of matters involving children, including

---

[8] This Court also indicated that the same requirement applies to a party appealing an order denying intervention under Rule 312. See Barnes, 871 A.2d at 794.

child custody actions, as exhibited by our appellate rules and Internal Operating Procedures ("IOPs"), which have responded to the unique issues associated with appeals involving children — deemed "children's fast track appeals" — by expediting such actions, "shorten[ing] the time frames for all aspects of the appellate process."  G. Ronald Darlington *et al.*, Pennsylvania Appellate Practice § 102:9.1.  Indeed, our appellate rules and IOPs provide for not only an expedited briefing schedule for children's fast track appeals, see Pa.R.A.P. 2185(a)(2), but also a reduced time period in which appellate courts are required to draft and circulate judicial opinions in such matters. See Supreme Court IOP § 4; Superior Court IOP § 65.42.

Accordingly, as Appellants' appeal satisfies each of the three elements of the collateral order doctrine, we conclude that the trial court's order denying intervention is an appealable collateral order as of right under Rule 313 and, consequently, that the Superior Court erred in quashing Appellants' appeal.  We, thus, reverse the order of the Superior Court and remand to that court for consideration of the merits of Appellants' appeal.

Jurisdiction relinquished.

Mr. Chief Justice Saylor and Messrs. Justice Eakin, Baer and Stevens join the opinion.