J-S22002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF:  C. E. C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF:  J. D., FATHER | No. 3439 EDA 2017 |

Appeal from the Decree September 19, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000947-2016

BEFORE:  BENDER, P.J.E., STABILE, J., and PLATT,[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 04, 2018**

J.D. ("Father") appeals from the decree entered on September 19, 2017, that granted the petition filed by the Philadelphia Department of Human Services ("DHS") to involuntarily terminate Father's parental rights to C.E.C. ("Child") (born in June of 2006) and to change the goal to adoption.[1,2]  We affirm.

In its opinion, the trial court set forth a brief history of this case, as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mother's parental rights were terminated in March of 2017.  We are unaware of any appeal that she may have filed.

[2] A guardian *ad litem* (GAL), Patricia Cochran, Esq., and a child advocate, Joe Capozzoli, Esq., were appointed to represent the best interests and legal interests of Child.  Both attorneys participated in the hearing.  Moreover, we note that Attorney Capozzoli reported to the court that he had visited with Child and Child had indicated his wish to be adopted by his foster parents. ***See*** N.T., 9/19/17, at 26.

The family became known to [DHS] on May 7, 2014[,] after DHS received a General Protective Services ("GPS") report alleging that Child had 84 unexcused absences, 17 latenesses [*sic*] and 4 excused absences[] during the 2013-2014 academic school year, *inter alia*. At that time the identity and whereabouts of [Child's] father [were] unknown to DHS. During an adjudicatory hearing on June 4, 2015, before the Honorable Jonathan Q. Irvine[,] Child was adjudicated dependent and the [c]ourt learned that J.D. was Child's biological father. On August 18, 2015, DHS conducted a Parent Locater Search ("PLS") on Father[,] which located him at 3319 Fairhill Street, Philadelphia, PA. On November 5, 2015, Father was arrested and charged with Aggravated Assault, Robbery, Conspiracy, Theft, Receiving Stolen Property, Possession of a Firearm, *inter alia*. On September 6, 2016, the Community Umbrella Agency ("CUA") revised Father's Single Case Plan ("SCP"). The objectives identified for Father were (1) to initiate and respond to CUA via phone and correspondence; (2) to comply with court ordered recommendations; and (3) to complete [] forthwith [a] drug screen and assessment.

On or about August 4, 2017[,] DHS filed the underlying Petition to Terminate Father's Parental Rights. On September 19, 2017, this [c]ourt ruled to terminate Father's parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(1) and (2) and ruled that the termination of Father's rights was in the best interest of [] Child and Child's goal was changed to adoption pursuant to 23 Pa.C.S.[] § 2511(b).

Trial Court Opinion (TCO), 11/30/17, at 2-3 (unnumbered).

The termination/goal change hearing took place on September 19, 2017. Father, who was represented by counsel, took part in the hearing by telephone from the Curran Freehold Correctional Facility, where he was incarcerated. The trial court provided the following discussion relating to the evidence presented at the hearing:

[T]his [c]ourt found clear and convincing evidence to terminate Father's parental rights as he failed to remedy the conditions that brought [] Child into care. Furthermore, Father's incarceration,

lack of housing, and failure to make any attempts to visit his Child while in prison also demonstrated that Father was unlikely to remedy the conditions within a reasonable period of time. The [c]ourt further found that because there was no strong bond between Father and Child[,] terminating parental rights would not cause the Child irreparable harm. Additionally, it would be in [] Child's best interest to be adopted due to [his] and his siblings sharing a supportive pre-adoptive foster home. At the termination hearing, the [c]ourt reviewed Father's extensive criminal history[,] which culminated in a conviction for felony Possession of a Controlled Substance by an inmate and his continued incarceration. The CUA Representative testified that Father had not achieved all of his SCP objectives nor had he attempted to perform any parental duties[,] which was evidenced by Father's decision to not seek visitation with Child from prison. The CUA Representative testified that Child was in a good pre-adoptive home and that his grades were improving and that Child had a parental bond with his foster parents. The CUA Representative testified that Father was unable to meet Child's needs and that there existed no parental bond between Father and Child and that there had been no contact between Father and Child for a year and a half. The CUA Representative testified that he believed that it was in Child's best interest that the goal be changed to adoption. The testimony of the CUA [Representative] was deemed to be credible and accorded great weight. As the testimony before the [c]ourt on September 19, 2017 indicates, the evidence is clear and convincing that Father did not remedy the condition that caused his Child to come into care and that Father continued to be unable to provide care for his Child, warranting the involuntary termination of [] Father's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1) and (2) and 23 Pa.C.S. § 2511(b).

TCO at 4-5 (unnumbered).

At the conclusion of the hearing, the court announced its decision from the bench, stating:

THE COURT: Having heard no evidence of that, having heard no evidence of father having family available, I – obviously, I have to rule in the best interest of the child.

- 3 -

> This child has been in placement for 28 months, since May of 2015. He is in placement with three other siblings. He's doing well in the pre-adoptive home.
>
> Father has not been compliant throughout the history of this case – presently serving five and a half to 18 years' incarceration.
>
> He's got a history of drug dealing, carrying guns, I presume shooting people, with an aggravated assault and firearms conviction, and he is in no position to parent this child at this time or in the near future.
>
> Therefore, I find the City has met its burden by clear and convincing evidence to terminate the parental rights of [J.D.], and any unknown putative father, under 2511(a)(1) and (2), and 2511(b).
>
> The goal for this child is changed to adoption.

N.T. Hearing, 9/19/17, at 28.

Father filed an appeal to this Court and attached a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(a)(2). His concise statement provides the following:

> The Father, JD, wishes to file an appeal on the grounds that the lower court abused its discretion and erred in law by not doing a family find and plac[ing] the child with family (maternal and/or paternal family[)]. Additionally, DHS/CUA did not make reasonable efforts to help Father to meet his goals and objectives to be reunified with Father or Father's family (maternal family, alternatively).

Father's Rule 1925(a) Statement.

In his brief, Father sets forth the following two issues:

> I.   Did the trial court abuse its discretion or err[] in law when it terminated Father's parental rights because he was incarcerated and where CUS made minmual [*sic*] efforts to assist Father in meeting his objectives and produced no evidence?

- 4 -

II. Did the trial court abuse its discretion or err[] in law when it denied the Grandparents['] motion to intervene and care for [] Child where they were appropriate caregivers and the Father wanted [] Child with family?

Father's brief at 4.

Initially, we note that in its brief, DHS asserts that Father has waived both issues set forth in his brief because they "do not align with the issues raised in his [c]oncise [s]tatement." DHS's brief at 9. We disagree, recognizing that Pa.R.A.P. 2116, entitled "Statement of Questions Involved," provides that the statement of the questions in the brief "will be deemed to include every subsidiary question fairly comprised therein." Rule 2116(a). Father has sufficiently included reference to both issues he wishes to argue in his concise statement and in his statement of questions in his brief. Therefore, he has complied with the Rule so as to allow this Court to address his arguments.

Next, we address Father's second issue relating to Maternal Grandfather's ("MG") motion to intervene, which we note does not appear of record. Father points out that in the permanency review order, dated March 2, 2017, the court directed "DHS to explore all family resources to include Maternal Grandfather." Permanency Review Order, 3/2/17. Additionally, the record contains a continuance order, dated June 21, 2017, which states, "Case was listed for Motion to Intervene (which was denied)[.]" Continuance Order, 6/21/17. We are also aware that the court referenced MG's motion to

intervene at the September 19, 2017 hearing. Specifically, the court stated that an attorney entered an appearance for MG on October 31, 2016, and filed a motion to intervene, which the court had denied. N.T., 9/19/17, at 25. The court also stated that "it was a little late in the game for the maternal grandfather to enter." *Id.*

To support his argument relating to the intervening of MG, Father cites 23 Pa.C.S. § 5324, which sets forth the requirements for standing for any form of physical or legal custody. The pertinent portion of that statute is section 5324(3), which provides the requirements for standing for a grandparent who is not in *loco parentis* to the child. Father further refers to a hearing held on June 21, 2017, at which he claims MG was in attendance with counsel. It appears that the June 21st hearing occurred in the context of the dependency matter, but other than the orders and comments identified above, no transcript of that hearing appears in the certified record.

DHS counters Father's argument, stating that neither Father nor MG appealed from the June 21st order and that, therefore, the issue has been waived. We are compelled to agree with DHS's position. In *K.C. v. L.A.*, 128 A.3d 774 (Pa. 2015), our Supreme Court with reliance on *In re Barnes Found.*, 871 A.2d 792 (Pa. 2005), stated that "a common pleas court's order denying intervention is one type of order which must be appealed within thirty days of its entry under Rule of Appellate Procedure 903, or not at all, precisely because the failure to attain intervenor status forecloses a later appeal." *K.C.*,

128 A.3d at 780 (quoting **Barnes**, 871 A.2d at 795). The **K.C.** Court further explained:

> While **Barnes** did not involve a child custody action, its language is broad and applies to any "common pleas court's order denying intervention." **Barnes**, 871 A.2d at 794. Moreover, the rationale behind requiring the immediate appeal of a denial of intervention in **Barnes**—namely, the risk of interference with subsequent trial proceedings—is even more pronounced in the context of a child custody action, given the significant interests at stake. We, therefore, find that **Barnes** applies to the trial court's order in the instant case. Accordingly, because **Barnes** unequivocally requires any party who was denied intervention and who satisfies the requirements of Rule 313[8] to appeal from the order denying intervention within 30 days of its entry or lose the right to appeal the order entirely. Appellants' right to appeal from the order denying intervention in the instant case will be manifestly lost if they are not permitted to appeal the order.
>
> > [8] This court also indicated that the same requirement applies to a party appealing an order denying intervention under Rule 312. **See Barnes**, 871 A.2d at 794.
>
> We recognize that this result may appear to be in tension with our goal of achieving the prompt resolution of child custody disputes, as permitting the piecemeal appeal of an order denying intervention may delay custody proceedings. However, we find this delay is preferable to the alternative of completely denying a party the right to file an appeal—given the possibility that the party does, in fact, have standing and should have been granted intervention—which then forces that party to file his or her own separate custody action in order to seek redress.

**K.C.**, 128 A.3d at 780-81. Accordingly, because no appeal was filed within thirty days of the June 21, 2017 order denying intervention, that issue must be considered waived.

We now turn to Father's first issue wherein he claims that the trial court erred by terminating his parental rights under 23 Pa.C.S. § 2511(a)(1).

- 7 -

Essentially, Father argues that the evidence presented by DHS was vague, that no objectives had been established for Father, and that no outreach was made at the prison where Father was housed.

We review an order terminating parental rights in accordance with the following standard:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

We are guided further by the following: Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *R.N.J.*, 985 A.2d at 276.

With regard to Section 2511(b), we direct our analysis to the facts relating to that section. This Court has explained that:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*,

946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In this case, as noted above, the trial court terminated Father's parental rights pursuant to section 2511(a)(1), (2) and (b).[3] We need only agree with

---

[3] These portions of the statute provide:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

***

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

- 10 -

the trial court as to any one subsection of section 2511(a), as well as section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In his brief, Father only takes issue with the trial court's determination as to subsection (a)(1), essentially asserting a lack of credible evidence to support the termination of Father's parental rights. He makes no reference to subsection (a)(2); nor does he address section 2511(b). Under these circumstances, it is apparent that Father does not disagree with the trial court's determination as to subsection (a)(2) or section 2511(b). Therefore, we need not address further Father's assertion of error relating to subsection (a)(1), because we may conclude that the petition requesting termination was properly granted under subsection (a)(2) and section (b). Moreover, we note that Father's contentions center solely on allegations relating to credibility, which we cannot overturn because our review reveals that the trial court's findings are supported by competent evidence. *See T.B.B.*, 8335 A.2d at 394. Accordingly, Father is not entitled to any relief.

Decree affirmed.

_____

which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2) and (b).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/4/18</u>