J-S08017-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JUSTIN P. HACKLING, BY AND THROUGH HIS POA DENISE A. HACKLING | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ASHELY M. HUNTING-HACKLING | : | No. 1715 MDA 2023 |
| | : | |
| APPEAL OF: DALE AND DENISE HACKLING | : | |

Appeal from the Order Dated November 20, 2023
In the Court of Common Pleas of Wyoming County Civil Division at
No(s):  2017-01284

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                **FILED APRIL 10, 2024**

Dale Hackling (Grandfather) and Denise Hackling (Grandmother) (collectively, Appellants) appeal from the order denying their petition to intervene in the underlying child custody action between Appellants' adult son, Justin P. Hackling (Father), and Ashley M. Hunting-Hackling (Mother) (collectively, Parents).  After careful review, we affirm.

The facts are not in dispute.  Parents were previously married, separated in 2017, and have two minor children, B.W.H. (born July 2013) and E.L.H. (born October 2015) (collectively, the children).  After Parents' separation,

---

[*] Former Justice specially assigned to the Superior Court.

Father briefly resided at Appellants' residence and exercised his periods of supervised[1] partial custody of the children at Appellants' residence during that time.[2] Grandmother, acting as Father's attorney-in-fact, commenced the underlying child custody action via a complaint filed in November 2017.[3] Pursuant to Parents' current custody order, Mother has primary physical custody of the children and Father has periods of partial custody. **See** Stipulated Order, 5/27/20, ¶¶ 1, 3.

Appellants filed the petition to intervene on September 11, 2023, seeking modification of the underlying custody order to grant Appellants periods of partial custody of the children. Appellants claimed

---

[1] Grandfather was the court-ordered supervisor. Order, 11/17/17, ¶ 17. Grandfather is no longer the supervisor of Father's custody periods. **See** Stipulated Order, 5/27/20, ¶ 4.

[2] After Parents' separation, Mother had primary physical custody of the children; Father had periods of partial custody pursuant to Parents' custody order. **See** Order, 11/17/17, ¶¶ 1, 3. In this order, the trial court also appointed the children a guardian *ad litem*, Brenda Kobal, Esquire (GAL). **Id.** at p. 2. The GAL filed a brief in the instant appeal.

[3] Grandmother acted pursuant to Father's power of attorney naming her as attorney-in-fact.

standing pursuant to Section 5325(2) of the Domestic Relations Code,[4] "as they are paternal grandparents, the [P]arents have commenced a custody proceeding and they will not allow visitation" by Appellants. Petition to Intervene, 9/11/23, ¶ 19; *see also id.* ¶¶ 17, 18 (invoking Pa.R.C.P. 2327 and 2328 (governing petitions to intervene)). According to Appellants, it would be in the children's best interests for the trial court to grant the petition to intervene. *Id.* ¶¶ 13, 15; *see also id.* ¶ 10 (claiming Appellants and the "children share a loving and close bond").

_____

[4] Section 5325(2) provides as follows:

> In addition to situations set forth in section 5324 (relating to standing for any form of physical custody or legal custody), grandparents and great-grandparents may file an action under this chapter for partial physical custody or supervised physical custody in the following situations:
>
> * * *
>
> **(2)** where the relationship with the child began either with the consent of a parent of the child or under a court order and where the parents of the child:
>
> > **(i)** have commenced a proceeding for custody; and
> >
> > **(ii)** do not agree as to whether the grandparents or great grandparents should have custody under this section[.]

23 Pa.C.S.A. § 5325(2); *see also M.W. v. S.T.*, 196 A.3d 1065, 1069 (Pa. Super. 2018) ("Generally, the Child Custody Act does not permit third parties to seek custody of a child contrary to the wishes of that child's parents. The Act provides several exceptions to this rule, which apply primarily to grandparents and great-grandparents." (citation omitted)).

On September 12, 2023, the trial court issued a rule on Mother to show cause why the court should not grant Appellants' petition to intervene.[5] Mother timely filed an answer on November 15, 2023. Mother emphasized that she and Father "jointly agree that [Appellants] should not be permitted to intervene, nor have contact with the [] children." Answer, 11/15/23, ¶ 13. Mother further claimed that Appellants' intervention was contrary to the children's best interests. *Id.* ¶ 15.

The matter proceeded to a hearing on November 15, 2024 (intervention hearing). The trial court competently summarized the evidence adduced at the intervention hearing:

> [I]t was represented to the [c]ourt that **Mother and Father agreed that they did not want [Appellants] intervening in this matter**. N.T., 11/15/23, at 7. [Mother] … testified that she and [Father] are the parents of … the … children at issue in this custody case. *Id.* at 9-10. [**Appellants**] **have not had contact with the minor children since 2019**[,] and [] prior to that[, Father] was residing with [Appellants] in 2018. *Id.* at 10. During 2018, when [Father] resided with [Appellants], he had custody of the minor children every other weekend[,] Friday until Sunday. *Id.* at 11. During some of [Father's] periods of custody, [Grandmother testified,] she was [o]rdered to supervise the visits due to [Father's] mental health issues. *Id.* at 14-17. … Although [Grandmother] testif[ied] she was directed to supervise the visits, it was actually [Grandfather who] was the supervisor. *Id.* at 27; *see also* Court Order dated November 17, 2017. Sometime in 2019, [Father] moved out of [Appellants'] home and [Appellants] have not seen the children since. *Id.* at 13.
>
> [Mother] testified that her divorce and custody of the children with [Father] was tumultuous and through [family]

---

[5] There is no indication in the record whether the trial court issued a rule to show cause upon Father as well.

- 4 -

therapy, [Father] and [Mother] had a breakthrough where they now have open communications regarding the children, as it is in the best interests of the children. *Id.* at 22. She further testified that she learned in therapy that the home life of [Father,] while [he was] living with [Appellants after Parents' separation,] was detrimental to his mental health. *Id.* at 22-23. [Father] and [Mother] are now a unified team when it comes to raising their children. *Id.* [Father] and [Mother] are both remarried and the four (4) parents have agreed that it is in the best interests of the children not to have visits with [Appellants]. *Id.*

Trial Court Opinion, 1/11/24, at 2-3 (emphasis and footnote added; citations modified).

Father proceeded *pro se* at the intervention hearing. Father asked no questions of any witness and presented no evidence. The trial court questioned Father as follows:

BY THE COURT: Do you have a position in the matter, sir?

[Father]: My position falls with [Mother].

BY THE COURT: I'd like to hear your position, sir. For the record, please.

[Father]: [] My concern is just with my children's mental health and making sure their mental health and emotional health are protected and not exposed to a dysfunctional environment. That's all I want.

BY THE COURT: Okay are you … opposed to supervised visitations with [Appellants]?

[Father]: Yes.

N.T., 11/15/23, at 28-29 (formatting modified).

Finally, the GAL also appeared at the intervention hearing. The GAL stated she had no position with respect to the petition to intervene, nor did

she address the children's best interests. *Id.* at 26; *see also id.* at 26, 27 (GAL stating she had no contact with the children, Mother, Father or Appellants since 2019).

The trial court denied Appellants' petition to intervene on November 20, 2023. This timely appeal followed. Appellants and the trial court have complied with Pa.R.A.P. 1925.

Appellants present a single issue for review:

Did the trial court abuse its discretion and err as a matter of law in denying [Appellants'] petition to intervene?

Appellants' Brief at 5 (capitalization modified).

We first confirm our jurisdiction, as the November 20, 2023, order denying intervention is interlocutory. An appeal lies only from a final order unless an exception to this general rule applies. *J.C.D. v. A.L.R.*, 303 A.3d 425, 429 (Pa. 2023); *see also* Pa.R.A.P. 341(a). One such exception is the collateral order rule, which is addressed at Pennsylvania Rule of Appellate Procedure 313. *J.C.D.*, 303 A.3d at 429; Pa.R.A.P. 313. Rule 313 "permit[s] immediate appellate review" of a collateral order, which is defined as

an order[: (1)] separable from and collateral to the main cause of action[; (2)] where the right involved is too important to be denied review[;] and [(3)] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313; *see also J.C.D.*, 303 A.3d at 429. An order denying intervention in a custody matter constitutes a collateral order. *K.C. v. L.A.*, 128 A.3d 774, 781 (Pa. 2015). Thus, the instant appeal is properly before us.

- 6 -

Turning to the merits, Appellants claim the trial court erred in denying intervention, where they established standing[6] under 23 Pa.C.S.A. § 5325(2), *supra*. **See** Appellants' Brief at 8-12. Appellants, however, concede that "[P]arents oppose [Appellants'] intervention." **Id.** at 11. Nevertheless, Appellants argue the trial court should have

> granted the petition to intervene and then scheduled a custody hearing to be conducted[,] at which time the factors as set for[th] under 23 Pa.C.S.A. § 5328 should have been applied.

**Id.** at 8 (capitalization modified); **see also** 23 Pa.C.S.A. § 5328 (detailing factors trial courts must consider in ruling on child custody matters).

Mother[7] counters the trial court did not abuse its discretion in denying Appellants' intervention, "as Appellants do not have any legally enforceable interest where [P]arents present a unified interest in denying grandparent contact." Mother's Brief at 5. According to Mother,

> there was no testimony to establish that [Mother and Father] were, in any way, unfit. There was clear testimony that both Parents agreed that contact with Appellant[s] [] was not appropriate for the subject children and that Mother and Father were in full agreement. Any decision that forces Mother and Father to permit contact with Appellants is in direct violation of [] Parents['] constitutional parent prerogatives and in violation of their Fourteenth Amendment rights.

---

[6] Appellants' argument focuses entirely upon the matter of standing; they do not address the children's best interests with respect to the petition to intervene. **See** Appellants' Brief at 8-12; **Helsel v. Puricelli**, 927 A.2d 252, 256 (Pa. Super. 2007) ("the examination of the best interests of the child may occur only *after* the trial court has determined that a grandparent has standing." (emphasis in original)).

[7] Father did not file an appellate brief.

*Id.* at 6-7 (capitalization modified).  Mother argues that it would be contrary to the children's best interests to allow Appellants' intervention.  *Id.* at 7 (pointing out testimony by Mother and Father about Father's purportedly "dysfunctional" home life when he previously resided with Appellants); *see also id.* at 3 (Mother emphasizing that Parents "have not come back to court in several years and have effectively co-parented.").

Finally, the GAL filed an appellate brief, concisely stating she "concurs with the opinion of the trial court … and [] with the position of … [Mother] as set forth in [Mother's] brief…."  GAL Brief at 1 (unpaginated) (capitalization modified).  The GAL "requests that this [] Court sustain the denial of Appellant['s] petition to intervene[.]" *Id.* at 2 (unpaginated).

"Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." *M.S. v. J.D.*, 215 A.3d 595, 598 (Pa. Super. 2019).  Under the traditional test for standing, "the proponent of the action must have a direct, substantial and immediate interest in the matter at hand." *Id.*

> [I]n custody matters, courts evaluate the concept of standing on a fluid basis, which necessarily implicates the immediacy prong of a standing analysis—*i.e.*, whether the interest the third-party seeks to protect is within the zone of interests sought to be protected by our custody statutes.

***Williams v. Williams***, 276 A.3d 226 (Pa. Super. 2022) (unpublished memorandum[8] at 18 (citation and brackets omitted)); ***see also Troxel v. Granville***, 530 U.S. 57, 65 (2000) (plurality) (stating the "liberty interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized" by the law).

We reiterate that the statute Appellants invoked to establish standing, 23 Pa.C.S.A. § 5325(2), ***supra***, provides, in relevant part, that

> grandparents … may file an action under this chapter for partial physical custody or supervised physical custody … where the parents of the child … have commenced a proceeding for custody[] and [] **do not agree** as to whether the grandparents … should have custody….

***Id.*** (emphasis added). Here, Parents agree Appellants should not have custody of the children. N.T., 11/15/23, at 23, 29; ***see also*** Trial Court Opinion, 1/11/24, at 4 ("Since 2019, [Mother] and [Father] have been coparenting the children and they do not believe it is in the children's best interests to allow [Appellants] to intervene in this matter."). Accordingly, Appellants lack a legal interest. ***See*** 23 Pa.C.S.A. § 5325(2)(ii); ***Herron***, 468 A.2d at 805 (affirming trial court's denial of grandparents' petition to modify child custody, and stating where both parents "have chosen not to have their children visit the grandparents[] to permit [] visitation," there is no precedent

---

8 Pursuant to Pa.R.A.P. 126(b)(1)-(2), unpublished non-precedential memorandum decisions of the Pennsylvania Superior Court filed after May 1, 2019 may be cited for their persuasive value.

that "legitimizes such an intrusion by the courts into family life."); **Helsel**, 927 A.2d at 254-55 (discussing **Herron** and affirming trial court's ruling that grandfather lacked standing to petition for visitation of his grandson, where parents did not wish grandfather to visit child); **see also Williams**, 276 A.3d 226 (unpublished memorandum at 19, 20 n.15) (upholding trial court's denial of grandparents' petition to intervene to seek partial custody of their grandson under Section 5325(2), where (1) grandparents did not stand *in loco parentis*[9] to their grandson, contrary to their claim; and (2) "although not the focus of their argument on appeal, grandparents are also unable to establish standing where parents did not disagree as to whether grandparents 'should have custody,' 23 Pa.C.S.A. § 5325(2)(ii)" (capitalization modified)). Based on the foregoing, we conclude the trial court did not err in denying Appellants' petition to intervene.

Order affirmed.

Judge Olson joins the memorandum.

P.J.E. Stevens concurs in the result.

---

[9] In the instant case, Appellants never argued they stand *in loco parentis* to the children. **Cf. Williams**, 276 A.3d 226 (unpublished memorandum at 8-20).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 04/10/2024