J-S23001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KARIN T. MOORE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHELLE MOSES AND | : | No. 729 EDA 2024 |
| CHRISTOPHER D. HARTFIELD | : | |

Appeal from the Order Entered February 26, 2024
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No:  0C2300832

BEFORE:   STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY STABILE, J.:                **FILED OCTOBER 25, 2024**

Karin T. Moore ("Appellant") appeals from the February 26, 2024 order dismissing her *pro se* child custody complaint against Michelle Moses ("Mother") and Christopher D. Hartfield ("Father") (collectively, "Parents") for lack of standing.[1]  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court initially ruled on September 15, 2023, that Appellant did not have standing to seek custody of the subject child, which Appellant timely appealed.  However, due to a technical error in the trial court, the notes of testimony were unable to be transcribed for review by this Court, and Appellant and the trial court were unable to agree on the nature of the testimonial evidence pursuant to Pa.R.A.P. 1923 (Statement in Absence of Transcript).  Thus, by *per curiam* order filed on January 8, 2024, this Court vacated the September 15, 2023 trial court order; reinstated Appellant's custody complaint and Mother's August 23, 2023 motion for expedited relief;
*(Footnote Continued Next Page)*

The record reveals that Appellant is Parents' former neighbor who babysat their natural son, A.H., born in June of 2022. *See* Trial Court Opinion, 4/2/24, at 6; *see also* N.T., 2/26/24, at 79-82. On April 13, 2023, Appellant filed *pro se* the subject custody complaint seeking sole legal and primary physical custody of A.H. Appellant alleged that she stood *in loco parentis* to A.H. In response, Mother filed *pro se* a motion for expedited relief seeking the child's return to her custody. On January 18, 2024, the trial court held a hearing on Mother's motion and entered a temporary order granting Parents sole legal and sole physical custody of A.H. The proceeding which is the subject of this appeal occurred on February 26, 2024. Appellant testified, along with her husband, Dwayne Stevens. Parents, acting *pro se*, testified on their own behalf. The trial court credited Parents' testimony and concluded that it "supports the fact that Mother and Father were an intact family, and that [Appellant] kept [A.H.] against their wishes." Trial Court Opinion, 4/2/24, at 10.

---

remanded the case to the trial court to conduct an on-the-record hearing; and relinquished jurisdiction. *See **Karin D. Moore v. Michelle Moses and Christopher D. Hartfield***, 2591 EDA 2023 (*per curiam* order filed January 8, 2024); *see also* Trial Court Opinion, 4/2/24, at 1-2. It is important to note that, as a result of the September 15, 2023 order, the child returned to Parents' custody, and, although this Court vacated that order, the child remained with Parents. According to Appellant, she did not see the child again from then through the time of the subject proceeding. *See* N.T., 2/26/24, at 44.

The court set forth the following pertinent findings from the testimonial evidence in its opinion pursuant to Pa.R.A.P. 1925(a).

> According to Mother's testimony, the parties' relationship with [Appellant] started around August 28, 2022, when Mother's other children started their school year.[2] [Appellant] would be a babysitter for [A.H.] while Mother would pick-up and drop-off her children at school. [Appellant] would watch [A.H.] for about one hour a day during this time. This relationship continued until Mother was diagnosed with Covid-19 in October of 2022. [A.H.] did not test positive for Covid-19, so Mother asked [Appellant] to watch [A.H.] for about two weeks while Mother quarantined. After the quarantine period was over, [Appellant] resumed babysitting [A.H.] for about an hour a day. Occasionally, [Appellant] would babysit [A.H.] overnight at the request of Mother. [Appellant] was never paid for her babysitting services because she stated to Mother "[A.H. is] a part of our family. We are happy to do so." This babysitting relationship continued until Mother moved at the end of March 2023, and asked [Appellant] to watch [A.H.] during the moving process, at which point [Appellant] then continued to keep [A.H.] in her care.
>
> . . .
>
> According to Mother's testimony, [Appellant] has attempted to assume a parent-like relationship with [A.H.] in defiance of Mother's wishes. For example, [Appellant] took [A.H.] on a family vacation without Mother's consent. (N.T., 2/26/23, at 74, 6-13). [Appellant] also baptized [A.H.] without Mother's and Father's consent. (*Id.* at 74, 15-17). Mother testified that "at no point in time did I not want custody of my child. . . . It has also been an emotionally damaging thing for me because she stole his first steps, his first words from me. She stole his christening from me." (*Id.* at 78, 15-22). Mother also provided that when [Appellant] refused to give [A.H.] back, Mother called the police; however, [Appellant] told the police officer that [Appellant] was a DHS officer, and that Mother was "a bitter mom who just lost custody of her child." (*Id.* at 77, 9-11). At no point did [Appellant] dispute this testimony, nor did [Appellant] offer any evidence to the court

---

[2] The record specifies neither the ages nor the number of Mother's school-age children. *See* N.T., 2/26/24, at 71-72, 76.

that she was a DHS officer or that [A.H.] was involved in any DHS investigation.

According to Father's testimony, [Appellant] made representations that seemed like she was only babysitting [A.H.] for about a month while Mother and Father moved and found new housing. Father stated "[w]e moved at the end of March, and it wasn't until . . . [the] end of April where . . . we're trying to get [A.H.] back." (***Id.*** at 82, 3-5). Father further testified that [Appellant] had once said, "[j]ust because you gave birth to him doesn't make you the parents. [A.H.] has family over here." (***Id.*** at 83, 10-12). According to Father's testimony, Mother and Father were together despite [Appellant]'s testimony stating the contrary. (***Id.*** at 96, 6-8).

Trial Court Opinion, 4/2/24, at 8-10 (cleaned up); ***see also*** N.T., 2/26/24, at 71-74.

By order filed on February 26, 2024, the trial court ruled that Appellant does not stand *in loco parentis* to A.H. and dismissed her custody complaint. Appellant timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed a Rule 1925(a) opinion on April 2, 2024.

On appeal, Appellant presents the following issues for review:

A. Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in determining that [Appellant] does not have standing in this matter[?]

B. Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in entering the order of February 26, 2024, since the facts, evidence and record in this matter do not warrant the entry of the subject order of court, in the light of the applicable statutes and/or case law[?]

C. Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in that the evidence and testimony of record

in this matter supports a finding that [Appellant] does have standing in this matter[?]

Appellant's Brief at 4.

Our Supreme Court has outlined the following principles and law applicable to standing in child custody matters.

The fundamental concept of standing ensures that a party seeking to litigate a matter has a substantial, direct, and immediate interest in the subject-matter of the litigation. *Ken R. on Behalf of C.R. v. Arthur Z.*, 546 Pa. 49, 682 A.2d 1267, 1270 (Pa. 1996); *see D.G. v. D.B.*, 91 A.3d 706, 708 (2014). "In the area of child custody, principles of standing have been applied with particular scrupulousness[.]" *D.G.*, 91 A.3d at 708. This stringent application of standing principles serves to protect both the interest of the court system by ensuring that actions are litigated by appropriate parties and the interest in keeping a family unit free from intrusion "by those that are merely strangers, however well-meaning." *Id.* (citation omitted). Indeed, in evaluating whether a Washington state statute conferring standing to "any person" to seek visitation of children, the United States Supreme Court has recognized the significant interest at stake in the context of persons seeking judicial intervention to gain visitation or custody of children. "The liberty interest . . . of parents in the care, custody and control of their children — is perhaps the oldest fundamental liberty interest recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). In Pennsylvania, Section 5324 of the Domestic Relations Code limits the classes of persons deemed to have a substantial, direct, and immediate interest in the custody of children by conferring standing only upon "(1) a parent of the child[;] (2) a person who stands in loco parentis to the child[; and] (3) a grandparent of the child who is not in loco parentis to the child[,]" under certain circumstances. 23 Pa.C.S. § 5324. Determining standing in custody disputes is a threshold issue that must be resolved before proceeding to the merits of the underlying custody action. *K.C. v. L.A.*, 633 Pa. 722, 128 A.3d 774, 779 (2015). It "is a conceptually distinct legal question which has no bearing on the central issue within the custody action — who is entitled to physical and legal custody" of a child in light of his or her best interests. *Id.* Issues of standing are questions of law; thus, the standard of review is *de novo* and the scope of

- 5 -

review is plenary.  ***K.W. v. S.L.***, 157 A.3d 498, 504 (Pa. Super. 2017).

***C.G. v. J. H.***, 193 A.3d 891, 898 (Pa. 2018).

Section 5324 provides in full, as follows.

**§ 5324. Standing for any form of physical custody or legal custody.**

The following individuals may file an action under this chapter for any form of physical custody or legal custody:

   **(1)** A parent of the child.

   **(2)** A person who stands in loco parentis to the child.

   **(3)** A grandparent of the child who is not in loco parentis to the child:

      **(i)** whose relationship with the child began either with the consent of a parent of the child or under a court order;

      **(ii)** who assumes or is willing to assume responsibility for the child; and

      **(iii)** when one of the following conditions is met:

         **(A)** the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);

         **(B)** the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

         **(C)** the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

   **(4)** Subject to paragraph (5), an individual who establishes by clear and convincing evidence all of the following:

- 6 -

**(i)** The individual has assumed or is willing to assume responsibility for the child.

**(ii)** The individual has a sustained, substantial and sincere interest in the welfare of the child. In determining whether the individual meets the requirements of this subparagraph, the court may consider, among other factors, the nature, quality, extent and length of the involvement by the individual in the child's life.

**(iii)** Neither parent has any form of care and control of the child.

**(5)** Paragraph (4) shall not apply if:

**(i)** a dependency proceeding involving the child has been initiated or is ongoing; or

**(ii)** there is an order of permanent legal custody under 42 Pa.C.S. § 6351(a)(2.1) or (f.1)(3) (relating to disposition of dependent child).

23 Pa.C.S.A. § 5324.

In all of her issues on appeal, Appellant presents the same single argument, *i.e.*, that the evidence is insufficient to support the court's conclusion that she does not stand *in loco parentis* to A.H. pursuant to Section 5324(2). Specifically, Appellant asserts that the court erred in not crediting her testimony in which she attempted to demonstrate that she assumed the status of a parent and discharged parental duties to A.H. with the consent and knowledge of Parents. **See** Appellant's Brief at 9. Appellant emphasizes her testimony regarding providing food, clothing, and shelter to A.H.; taking A.H. to all of his medical appointments; and spending holidays and vacations with A.H. **Id.** at 9-10. Upon review, Appellant's argument is without merit.

This Court has explained:

> [T]he term *in loco parentis* literally means in the place of a parent. A person stands *in loco parentis* with respect to a child when he or she assumes the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties. Critical to our discussion here, *in loco parentis* status cannot be achieved without the consent and knowledge of, and in disregard of, the wishes of a parent.

*Hunt v. Vardaro*, 317 A.3d 1046, 1050 (Pa. Super. 2024) (citation omitted).

Here, the trial court explained "there were many factual discrepancies that occurred in the testimony of the parties," and it found Parents extremely credible. Trial Court Opinion, 4/2/24, at 6. For instance, Appellant testified that she and her husband took A.H. to every medical appointment starting at his six-week appointment, and that Mother went to the first appointment and "another one, maybe at three months." Trial Court Opinion, 4/2/24, at 7 (citing N.T., 2/26/24, at 12-14). However, Mother testified that A.H. did not have a six-week appointment because "[h]e was in the NICU [at that time]. And then three months later he had his appointment [o]n August 16th, right after my birthday[,] and I went with him." N.T., 2/26/24, at 74-75. Mother testified that she took A.H. to his doctor appointment in October, but Appellant "came with me to the appointment . . . because I didn't have a car. When my car broke down[,] I asked for a ride." *Id.* at 75. Mother testified that she "went to one other [medical appointment for A.H.] at which point [Appellant] would not even let me hold my child." *Id.*

With respect to Appellant's allegation that she provided food and clothing to A.H., Mother testified she provided Appellant with preserved breastmilk and Pamper diapers when she babysat. *Id.* at 73-74. Further, in response to Appellant's assertion that she took A.H. with her on vacation and baptized him, Mother testified as follows.

> THE COURT: And did you agree that they would take the child on vacation?
>
> [A]: No.
>
> THE COURT: How did that happen?
>
> [A]: We didn't even know that they went until afterwards. Never had permission.
>
> THE COURT: So were you looking for [A.H.]?
>
> [A]: Yes.
>
> THE COURT: And what happened?
>
> [A]: She wouldn't respond to text messages or phone calls. I didn't even know my child was christened and was not invited.

*Id.* at 74.

> Similarly, Father testified that Appellant
>
> put us at ease by making it seem like . . . she was just watching him, and we didn't have to worry about anything. And then she started taking pictures with him and going on holidays with him to make it seem –
>
> (Brief Pause)
>
> THE COURT: Take your time, dad. We have all day.
>
> (Brief Pause)

THE COURT: For the record[,] dad is getting very emotional and we're giving him a minute to get a breath.

[Father]: So she presented herself like she just wanted to watch him. We didn't have to worry about anything. . . .

And then she would do things like refuse to take diapers from us, to take milk. . . .

*Id.* at 79-80. Father testified that he and Mother allowed Appellant to care exclusively for A.H. for approximately one month, from March until April of 2023, during the family's move from the apartment building. *Id.* at 82. He testified that, at the end of April, he and Mother tried to retrieve A.H. from Appellant, but "she had made it extremely difficult for us to reach" her. *Id.* at 82-83. Father explained:

[Appellant] had stopped communicating with my wife. I initially had messaged her. What happened was she sent a very aggressive message . . . saying . . . "Just because you gave birth to him doesn't make you the parents. He has family over here." Again in the messages refusing . . . to let us see him.

We went to go talk to her after she sent the messages because I was highly concerned. Up until then the conversation was we were able to see him. There were no issues. Once we actually were trying to get [A.H.] back now she's sending messages saying that she had already had him long enough in order to file for custody. [S]he would do whatever she could to protect him. Now she's becoming very aggressive. . . .

*Id.* at 83.

In evaluating the testimonial evidence, the trial court observed that although Appellant

claimed that [A.H.] was left in her care, and that she played a parental role in the [c]hild's life, [she] did not assert in her testimony that it was Mother's and Father's intention to relinquish

- 10 -

their rights and to have [Appellant] assume parental duties for the [c]hild. When asked by the court if [Appellant]'s intention was to give [A.H.] back to the parents, [Appellant] answered "[y]es. I wanted [A.H.] to transition. (N.T., 2/26/24, at 20-23, 43). At one point, [Appellant] provided that she said to Mother, "[l]isten, if you really want him back let's transition him the right way. You can't just snatch him up and just say, 'Okay I'm his mother so I get to take him.'" (*Id.* at 10). This statement highlights the fact that [Appellant] was preventing Mother from exercising her *prima facie* right to the infant child. Thus, [Appellant]'s testimony indicated to the court that [Appellant] acknowledged the fact that Mother and Father were not giving up their parental rights to the child, but also chose to disregard their wishes and to file for sole legal and primary physical custody of the child.

Trial Court Opinion, 4/2/24, at 8 (cleaned up).

In this case, the record evidence supports the trial court's factual findings, and we discern no error in its conclusion that Appellant did not stand *in loco parentis* to A.H. pursuant to Section 5324(2). The evidence overwhelmingly supports the court's conclusion that Appellant attempted to assume parental status and discharge parental duties to the child "without the consent and knowledge of, and in disregard of, the wishes of" Parents. ***Hunt v. Vardaro***, 317 A.3d at 1050; ***see also*** N.T., 2/26/24, at 78, 85 (Mother's testimony that "at no point in time did I not want custody of my child;" Father's testimony that, as far as he was concerned, Appellant was taking care of A.H. "temporarily"). Accordingly, we affirm the order.

Order affirmed.

- 11 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/25/2024