J-S17035-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BURNS ELECTRICAL SERVICES, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHAILESH PATEL AND SHREE MOHAN, LLC | : | |
| | : | No. 2687 EDA 2023 |
| Appellants | : | |

Appeal from the Order Entered September 20, 2023
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2020-15993

BEFORE: BOWES, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED AUGUST 6, 2024**

Appellants, Shailesh Patel and Shree Mohan, LLC, appeal from the trial court's September 20, 2023 order, which granted summary judgment in favor of Appellee, Burns Electrical Services, Inc. ("Burns"); awarded $43,823.20 to Burns; and dismissed with prejudice Appellants' counterclaims. After review, we reverse and remand.

This case was initiated in the court of common pleas as an appeal from a district justice judgment. Burns had sued Appellants in magisterial district court and obtained a judgment against Appellants in the amount of $12,219.25.

Following Appellants' appeal to the court of common pleas, Burns filed a complaint in October of 2020. Therein, *inter alia*, Burns alleged that, in 2017, Appellant Patel contracted with Burns within the meaning of the

Contractor and Subcontractor Payment Act ("CASPA"), 73 P.S. §§ 501-517. Burns's Complaint, 10/27/20, at 2 ¶ 10.[1] According to Burns, at the request of Appellant Patel, Burns purchased materials and performed electrical work on an ice cream kiosk in Willow Grove Park Mall which it believed Appellant Shree Mohan, LLC owned and operated. *Id.* at 2 ¶ 11. Burns claimed that the work was completed before August 9, 2017, the date when — at Burns's direction — the electrical work was inspected and approved by United Inspection Agency, Inc. *Id.* at 2 ¶ 12. After the final inspection approval, Burns said it submitted a final invoice for payment, with a balance due of $17,465.27, on August 10, 2017. *Id.* at 2 ¶ 14.[2] Burns averred that Appellant Patel made one payment of $5,000.00 to Burns, and failed to provide any written notice of a deficiency in the work, as required under CASPA. *Id.* at 2

---

[1] This Court has explained that:

> CASPA is a comprehensive statute enacted in 1994 to cure abuses within the building industry involving payments due from owners to contractors, contractors to subcontractors, and subcontractors to other subcontractors. The underlying purpose of CASPA is to protect contractors and subcontractors and to encourage fair dealing among parties to a construction contract. The statute provides rules and deadlines to ensure prompt payments, to discourage unreasonable withholding of payments, and to address the matter of progress payments and retainages. Under circumstances prescribed in the statute, interest, penalties, attorney's fees, and litigation expenses may be imposed on an owner, contractor, or subcontractor who fails to make payment to a contractor or subcontractor in compliance with the statute.

*El-Gharbaoui v. Ajayi*, 260 A.3d 944, 954 (Pa. Super. 2021) (cleaned up).

[2] Burns attached no exhibits to its complaint, including this invoice.

¶¶ 15, 16 (referencing 73 P.S. § 506(b)(1)).[3] Burns contended that Appellants owe Burns the balance of the invoice — $12,465.27 — as well as interest, penalties, reasonable attorneys' fees, and court costs. *Id.* at 3 ¶¶ 18-23.

In November of 2020, Appellants filed an answer to Burns's complaint, along with affirmative defenses and counterclaims.[4] Therein, in pertinent part, Appellants acknowledged that Burns provided paperwork showing that an inspection was performed by United Inspection Agency, Inc., but stated that the inspection was conducted and approved on August 8, 2017, not August 9, 2017. Appellants' Answer, Affirmative Defenses, and Counterclaims, 11/17/20, at 3 ¶ 12. Further, they denied that Burns completed the electrical work and claimed that they "were forced to employ another electrician to complete the outstanding tasks required to obtain the

─────────────────────────────

[3] As discussed *infra*, if an owner withholds payment from a contractor for a deficiency item, "the amount withheld shall be reasonable and the owner shall notify the contractor of the deficiency item by a written explanation of its good faith reason within 14 calendar days of the date that the invoice is received." 73 P.S. § 506(b)(1). Failure to do so constitutes a waiver of the basis to withhold payment and necessitates payment of the contractor in full for the invoice. 73 P.S. § 506(b)(2).

[4] Though not mentioned by either party, it appears that this filing did not include a notice to plead. *See* Pa.R.Civ.P. 1026(a) ("[E]very pleading subsequent to the complaint shall be filed within twenty days after service of the preceding pleading, but no pleading need be filed unless the preceding pleading contains a notice to defend or is endorsed with a notice to plead."); *Note* to Pa.R.Civ.P. 1361 ("A responsive pleading is not required to be filed unless a notice to plead has been endorsed on the prior pleading other than a complaint.").

inspection and approval." *Id.*[5] Appellants also denied Burns's allegation that Burns submitted a final invoice for payment with a balance due of $17,465.27 on August 10, 2017, claiming that the document referenced speaks for itself. *Id.* at 3-4 ¶ 14.[6] By way of further response, Appellants explained that, "when the electrical work was approved on August 8, 2017, [Appellants] paid [Burns] on that same day with a check [in] the amount of $5,000.00 for the full, verbally agreed[-]upon amount due to [Burns] for the approved electrical work." *Id.* They added that Burns's invoice was sent to Appellants sometime between August 10, 2017 and August 25, 2017, which was after Burns had already accepted and cashed Appellants' check in the amount of $5,000.00. *Id.* As for Burns's claim that Appellants did not provide it with written notice of a deficiency in the work as required under CASPA, Appellants denied that allegation on the basis that it states a legal conclusion to which no responsive pleading is required. *Id.* at 4 ¶ 16. Appellants also denied that they owed Burns the invoice's balance of $12,465.27, asserting that they "had an oral agreement that the electrical work to be performed in accordance with the specifications provided to [Burns] by the kiosk's designer … would cost $5,000.00." *Id.* at 4 ¶ 18.

_____

[5] It is not clear to us when Appellants employed the other electrician to obtain the inspection and approval. Moreover, as set forth *infra*, although Appellants stated in this filing that they were forced to employ another electrician to receive the approval, Appellants represent in subsequent filings that Burns's work was sufficient to obtain the approval.

[6] Although Appellants attached other exhibits to this filing, Appellants did not attach Burns's invoice.

In addition, Appellants' counterclaims against Burns and its owner alleged breach of contract, fraud, fraudulent misrepresentation, and negligent misrepresentation. The counterclaims centered around Appellants' assertions that it was represented to them that Burns would be able to complete the work for $5,000.00 or less, that Burns had the requisite knowledge and experience to perform the required electrical work, and that the electrical work would be performed in accordance with the specifications provided to Burns by the kiosk's designer. *See id.* at 7-8 ¶¶ 5-9. According to Appellants, Burns failed to complete the electrical work pursuant to the parties' agreement, and Appellants were forced to employ another electrician to complete the final electrical details required to obtain inspection approval. *Id.* at 8 ¶ 11. Nevertheless, they said Burns was paid the verbally agreed-upon amount of $5,000.00, and that Burns accepted the check as full and final payment for the work completed. *Id.* at 8 ¶¶ 12, 13. Appellants averred that, "[i]f additional electrical work was required outside the scope of the original specifications and [a]greement, Burns['s owner] never notified and purposely withheld such information from [Appellants] to induce them to pay more money for the same work." *Id.* at 9 ¶ 21.

Following the filing of Appellants' answer, new matter, and counterclaims, nothing transpired on the docket for over two years. On November 30, 2022, the trial court entered a case management order, in which it directed, among other things, that all fact discovery shall be

completed within six months from the date of its order and that all dispositive motions shall be filed within nine months from the date of its order.

On February 17, 2023, before fact discovery closed, Burns filed a motion for summary judgment.[7] Burns argued that, after it submitted a final invoice for payment, Appellants did not give written notice of any deficiency in the work, and thereby waived the right to claim a good faith withholding of payment under CASPA. Burns's Motion for Summary Judgment, 2/17/23, at 2 ¶¶ 8-9. Thus, Burns said Appellants waived their various defenses and counterclaims. *Id.* at 3 ¶ 10. Burns requested that the trial court order summary judgment in its favor, dismiss Appellants' counterclaims, and award it at least $40,831.54 for the balance of the contract, interest, penalties, attorneys' fees, and costs. *Id.* at 3.

Appellants subsequently filed a response in opposition on March 20, 2023.[8] They reiterated that Burns represented that it would be able to complete the work for $5,000.00 or less, and stated that Burns "complete[d] enough work to obtain [t]ownship approval, however, [Burns] failed to complete the electrical work in accordance with the plans and specifications of [Appellants'] engineer pursuant to the agreement between the parties." Appellants' Response in Opposition to Motion for Summary Judgment,

_____

[7] Burns attached no exhibits and did not cite any evidence in support of its motion.

[8] Appellants attached several exhibits to their response, including a $5,000 check it said it issued to Burns on August 8, 2017, and a copy of an email their engineer allegedly sent to Burns in June of 2017 with project directions.

3/20/23, at 5 ¶ 8. Consequently, while Appellants said they paid Burns the full, verbally agreed-upon amount due, they asserted that they "were forced to employ another electrician to complete the additional work required to comply with the engineer's plans and specifications." *Id.* at 4 ¶ 6.[9] Appellants also claimed that "there are genuine issues of material fact in this matter which [Appellants] have not had the opportunity to address via discovery because [Burns] filed the instant motion before the expiration of the discovery end date…." *Id.* at 5 ¶ 8.[10] Appellants further stated that their defenses are not waived. *Id.* at 6 ¶ 10.

On March 23, 2023, days after Appellants filed their response in opposition to Burns's motion for summary judgment, Burns simultaneously — and confusingly — filed both preliminary objections and an answer to Appellants' counterclaims. In Burns's preliminary objections, which were separately filed from its answer, Burns sought dismissal of Appellants'

_____

[9] Appellants further stated in their memorandum in support of their opposition to Burns's summary judgment motion that they discovered that Burns did not complete the electrical work in accordance with the plans and specifications of their engineer *after* they had already paid Burns $5,000.00 in accordance with their contract. *See* Appellants' Response in Opposition to Motion for Summary Judgment at attached Memorandum of Law at 13. *See also* Appellants' Brief at 5 ("After fully performing their obligations under the contract, Appellants later discovered that [Burns] did not properly complete the electrical work on the kiosk in accordance with the plans and specifications provided by Appellants' designer as required by the [a]greement.").

[10] Appellants asserted that they had propounded discovery on Burns but, at that point, the time with which Burns had to respond had not yet expired. *See* Appellants' Response in Opposition to Motion for Summary Judgment at attached Memorandum of Law at 13.

- 7 -

counterclaims, arguing that Appellants waived them because CASPA "mandates that the claims made by [Appellants] … be raised in writing … after receiving the final invoice." Burns's Preliminary Objections, 3/23/23, at 3 ¶ 9.

In Burns's answer, Burns claimed, *inter alia*, that it "performed the work and received inspection approval and claims to the contrary are made in bad faith." Burns's Answer, 3/23/23, at 1 ¶ 11. It also averred that "[t]here was never a fixed[,] agreed[-]upon cost for the contract[,]" and only "[a] partial payment was made in the amount of five thousand dollars." *Id.* at 2 ¶ 12. Further, Burns denied Appellants' assertion that the work was to be performed in accordance with the specifications provided by the kiosk's designer, and instead stated that "[t]he work was to be performed in accordance with the variance [*sic*] requirements of the electrical code, Willow Grove Park Mall, and all other regulatory authorities." *Id.* at 1 ¶ 8. Burns also reiterated multiple times that Appellants' counterclaims were waived under CASPA. *See, e.g.*, *id.* at 2 ¶¶ 21-24.

On April 10, 2023, the trial court entered an order stating that Burns's motion for summary judgment was granted, and that Appellants' counterclaims were dismissed with prejudice. However, in that order, the trial court did not specify an award for Burns.

Consequently, on September 20, 2023, the trial court entered another order, in which it directed that Burns's motion for summary judgment was granted and provided that judgment was entered in favor of Burns in the

amount of $43,823.20 as of August 30, 2023. It again stated that Appellants' counterclaims were dismissed with prejudice.

On October 10, 2023, Appellants filed a notice of appeal from the trial court's September 20, 2023 order.[11] The trial court instructed Appellants to file a Pa.R.A.P. 1925(b) concise statement, and they timely complied.[12] The trial court later issued a Rule 1925(a) opinion. There, it explained that Burns was entitled to judgment as a matter of law, because — after Burns filed a final invoice for payment of $17,465.27 — Appellants did not properly respond in writing in accordance with CASPA's requirements. Trial Court Opinion ("TCO"), 12/7/23, at 4. Consequently, under CASPA, the trial court

_____

[11] We consider the trial court's September 20, 2023 order as the final order in this matter, as it fully disposed of the claims below by indicating the amount of Burns's award. *See **Z.P. v. K.P.**,* 269 A.3d 578, 586 (Pa. Super. 2022) ("A final order in a civil case is one that disposes of all the parties and all the claims….") (citation omitted).

[12] In Appellants' Rule 1925(b) concise statement, they stated, *inter alia*, that the trial court erred by granting Burns's summary judgment motion when genuine issues of material fact exist, including but not limited to whether Burns engaged in conduct that breached the contract and whether Burns's claims arise as a result of its performance of work that was outside the scope of the agreement. *See* Rule 1925(b) Statement, 10/31/23, at 1-2 ¶ 1. Along with complaining that they did not have an opportunity to make full discovery, Appellants also pointed to their counterclaims and asserted that there are facts in dispute that must be resolved by a trier of fact. *Id.* at 1-2 ¶ 1, *see also id.* at 2 ¶ 2. In addition, they conveyed that — beyond the errors that they set forth — "it is difficult to determine any further errors or abuses because the trial court did not issue an opinion to accompany the [o]rder issued on September 20, 2023." *Id.* at 2 ¶ 3. *See also* Pa.R.A.P. 1925(b)(4)(vi) ("If the appellant in a civil case cannot readily discern the basis for the judge's decision, the appellant shall preface the Statement with an explanation as to why the Statement has identified the errors in only general terms. In such a case, the generality of the Statement will not be grounds for finding waiver.").

determined that Appellants waived any basis to withhold payment and were required to make payment in full for the invoice. *Id.* (referencing 73 P.S. § 506(b)(2)).

On appeal, Appellants raise the following questions for our review:

[1.] Did the Court of Common Pleas err as a matter of law by granting summary judgment while genuine issues of material fact exist?

[2.] Did the Court of Common Pleas err as a matter of law in making a credibility determination without testimony and determining that Appellants were liable under [CASPA]?

[3.] Did the Court of Common Pleas err as a matter of law by dismissing Appellants' counterclaims?

[4.] Did the Court of Common Pleas err as a matter of law by granting summary judgment prior to discovery being conducted?

Appellants' Brief at 2.[13]

At the outset, we acknowledge that, when reviewing a trial court's grant of summary judgment, we apply the following standard and scope of review:

Our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are

_____

[13] We have re-ordered Appellants' issues for ease of disposition.

undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Reinoso v. Heritage Warminster SPE LLC*, 108 A.3d 80, 84 (Pa. Super. 2015) (*en banc*) (cleaned up).

We address Appellants' first two issues together. Appellants argue that the trial court erred as a matter of law by determining that Appellants are liable under CASPA and granting summary judgment when genuine issues of material fact exist. Appellants' Brief at 12, 14. They assert that the agreement between the parties was an oral agreement and that there are questions of fact about the contract's terms, including the agreed-upon contract amount and whether Appellants made payment in full in accordance with the agreement, among other things. *Id.* at 16. Despite the fact that essentially no discovery was conducted, Appellants say the trial court "made its own determination regarding the terms of the oral agreement[,]" finding that the agreement was for the amount of $17,000.00 and that Appellants violated CASPA by refusing to pay Burns for work they deemed deficient. *Id.* at 17; *see also id.* at 15-16. Contrary to the trial court's finding, Appellants maintain that they paid the contract in full, as the agreement "required [Burns] to complete the necessary electrical work … in accordance with the plans and specifications of Appellants' kiosk designer for the amount of $5,000.00 to be paid upon completion of the work." *Id.* at 20; *see also id.* at 17-18. With respect to the invoice submitted by Burns, Appellants say they

did not withhold payment based on deficient work but, instead, "did not make any further payment because [they] deemed the oral contract complete and [Burns] was paid in full." *Id.* at 18.

We agree with Appellants that the trial court erred in granting summary judgment. This Court has explained that:

> By its terms, CASPA applies to construction contracts. One must first establish a contractual right to payment pursuant to either a written or oral contract, and breach of that contract, to be entitled to CASPA relief. Thus, the construction contract is the starting point of any CASPA analysis. CASPA does not supplant the traditional breach of contract action between contracting parties; it merely makes additional remedies available to contractors and subcontractors when they are not promptly paid by the party with which they contracted.

*Scungio Borst & Associates v. 410 Shurs Lane Developers, LLC*, 106 A.3d 103, 109 (Pa. Super. 2014) (*en banc*) (citations omitted).

Relevant to the matter before us, Section 504 of CASPA provides that "[p]erformance by a contractor or a subcontractor in accordance with the provisions of a contract shall entitle the contractor or subcontractor to payment from the party with whom the contractor or subcontractor has contracted." 73 P.S. § 504. In addition, regarding payment and invoices, Section 505 states, in pertinent part:

> **(a) Construction contract.--**The owner shall pay the contractor strictly in accordance with terms of the construction contract.
>
> **(b) Absence of payment term.--**In the absence of a construction contract or in the event that the construction contract does not contain a term governing the terms of payment, the contractor shall be entitled to invoice the owner for progress payments at the end of the billing period. The contractor shall be

entitled to submit a final invoice for payment in full upon completion of the agreed-upon work.

73 P.S. § 505(a), (b).

Furthermore, with respect to withholding payment and notice, Section 506 sets forth:

**(a) Authority to withhold.--**The owner may withhold payment for deficiency items according to the terms of the construction contract. The owner shall pay the contractor according to the provisions of this act for any item which appears on the invoice and has been satisfactorily completed.

**(b) Notice.--**

(1) Except as provided under [73 P.S. § 509, which addresses retainage], ***if an owner withholds payment from a contractor for a deficiency item***, the amount withheld shall be reasonable and the owner shall notify the contractor of the deficiency item by a written explanation of its good faith reason within 14 calendar days of the date that the invoice is received.

(2) Failure to comply with paragraph (1) shall constitute a waiver of the basis to withhold payment and necessitate payment of the contractor in full for the invoice.

(3) If an owner withholds payment from a contractor for a deficiency item, the owner shall remit payment to the contractor for each other item that has been satisfactorily completed under the construction contract.

73 P.S. § 506 (footnote omitted; emphasis added). "Deficiency item" is defined as "[w]ork performed but which the owner, the contractor or the inspector will not certify as being completed according to the specifications of a construction contract." 73 P.S. § 502.

As stated *supra*, the starting point of any CASPA analysis is the construction contract. ***Scungio Borst & Associates***, ***supra***. Here, there is a factual dispute as to the terms of the contract. Appellants have consistently

insisted that the parties agreed Burns would complete the electrical work in accordance with the plans and specifications of Appellants' kiosk designer for $5,000.00. Burns denies this contention, suggesting that it did not have to follow the kiosk designer's specifications and that there was no fixed, agreed-upon cost for its work.

Importantly, at the summary judgment stage, we must "view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." **See Reinoso**, **supra**. Thus, at this juncture, we must credit the claims advanced by Appellants.[14] Appellants contend that Burns agreed to perform the electrical work in accordance with the plans and specifications of Appellants' kiosk designer for $5,000.00, and that they paid Burns that amount. Accepting this contention as true for purposes of our review, Appellants paid Burns strictly in accordance with the terms of the construction contract when they paid Burns $5,000.00. **See** 73 P.S. § 505(a), **supra.** As a result, a fact-finder could determine that Appellants were not withholding payment from Burns for a deficiency item under Section 506 when they did

_____

[14] Contrary to the standard of review for summary judgment, the trial court seemingly viewed the record in the light most favorable to Burns and credited Burns's allegations, including its claim that there was no fixed, agreed-upon contract amount. **See** TCO at 4 ("[Burns] … completed the work contemplated by the parties' agreement on August 9, 2017. On August 10, 2017, following the inspection and approval…, [Burns] filed a final invoice for payment of $17,465.27. Appellants … did not properly respond in writing. As a result, Appellants waived any basis to withhold payment, and therefore, were required to make payment in full for the invoice pursuant to [Section] 506(b)(2).").

not pay the amount invoiced by Burns. Rather, the fact-finder could conclude that Appellants did not pay Burns's invoice because they had already paid Burns in full, and any additional payment was not part of the agreement. Under this view of the facts, because Appellants were not withholding payment for a deficiency item, they would not have been obligated to notify Burns of the deficiency item by written explanation pursuant to Section 506(b)(1), and the waiver provision of Section 506(b)(2) would not apply. Accordingly, the trial court erred in granting summary judgment in favor of Burns on the basis of Section 506(b)(2) waiver. **See Reinoso**, 108 A.3d at 84 ("If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.") (citations omitted). We therefore reverse the trial court's decision with respect to summary judgment and remand. On remand, the trial court should permit the parties to conduct discovery on the factual issues.

In Appellants' third issue, they challenge the trial court's dismissal of their counterclaims. They argue that the trial court improperly made credibility determinations in deciding to dismiss them. Appellants' Brief at 29.

In the trial court's Rule 1925(a) opinion, the trial court did not specifically address Appellants' counterclaims. However, a review of the record shows that Burns only sought the dismissal of Appellants' counterclaims on the basis that Appellants waived them by not sending Burns written notice pursuant to Section 506(b)(1). As we have already determined that a fact-finder could conclude that Appellants paid Burns in full, rendering

Section 506's requirements inapplicable, dismissal on that basis was inappropriate. As a result, we likewise reverse the trial court's September 20, 2023 order to the extent it dismissed Appellants' counterclaims with prejudice.[15]

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/6/2024

---

[15] We need not address Appellants' last issue due to our disposition.